IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARCI MIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO.  4:21-cv-00405 |
| | § | |
| ASHFIELD HEALTHCARE, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Darci Mims ("Plaintiff" or "Ms. Mims") files this Original Complaint against Ashfield Healthcare, LLC ("Defendant").

**SUMMARY**

1.      Ms. Mims is a female who was employed by Defendant as a pharmaceutical sales representative.  As part of her duties, Ms. Mims would call on doctors in order to complete sales for the company.

2.      While performing her duties, Ms. Mims was sexually harassed by a doctor.  She reported this sexual harassment to her manager, Bo Boson, in March 2019.  In April 2019, Ms. Mims's contract was not renewed by Mr. Boson.

3.      Ms. Mims consistently met and exceeded corporate goals set out for her and was a stellar performer based on objective and specifically defined criteria and performance metrics.

4.      Her non-renewal and resulting termination was not based on objective, non-retaliatory reasons.  Rather, she was terminated as a result of her reporting of sexual harassment.

5.      Ms. Mims was terminated in violation of Title VII of the Civil Rights Act of 1964.

## THE PARTIES AND JURISDICTION

6.      Plaintiff Darci Mims is a natural person residing within the confines of the Southern District of Texas, Houston Division.  Ms. Mims has standing to file this lawsuit.

7.      Defendant Ashfield Healthcare, LLC is a Florida limited liability company headquartered in Pennsylvania and doing business in the Southern District of Texas.

8.      Defendant may be served with this Complaint through its registered agent, Capitol Corporate Services, Inc., at its registered address, 206 E. 9th Street, Suite 1300, Austin, TX 78701.

9.      The Court has personal jurisdiction over Defendant based on specific jurisdiction.

10.      The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act.

## FACTUAL BACKGROUND

11.      Ms. Mims has worked in pharmaceutical sales for over two decades.  She signed a three year seasonal contract with Defendant in 2018, whereby she would work six months on, from October to March, and six months off.  This was her second contract with Defendant.  At the commencement of her contract, Ms. Mims was told that it would be for a guaranteed three-year term.

12.      Under the contract, Ms. Mims was tasked with selling a new-to-market drug to combat the flu.  Her start date pursuant to the contract was October 8, 2018.

13.      One of the doctors Ms. Mims called on under the contract was Dr. John Gilmore at the Cypress Lakewood Clinic in Houston, Texas.  On March 20, 2019, Ms. Mims attended a lunch and learn with Dr. Gilmore.  Dr. Gilmore sat down with his lunch across the table from Ms. Mims and almost immediately began an argument about the merits of her product versus a competitor's product.  When Ms. Mims attempted to reply, Dr. Gilmore responded with sexist comments including, "your company hired you for your looks and not your brains, huh?"; "you think you can

just come in here with your cute little short skirt that screams grab my ass?"; and "you think you can just flit your little eyelashes at me and make me write your product?"

14.     Dr. Gilmore's language then became darker and more perverse in nature.  He leaned closer to her and whispered sexually charged statements including, "you do these things to me because you want me to 'f' you, don't you"; "you know you want me!"; and "you'd look good tied up to my bed."  There were other staffers in the room who witnessed the incident.  Both Ms. Mims and multiple female employees told Dr. Gilmore to stop.  When he did not, Ms. Mims gathered up her things and left the office.

15.     In tears, she immediately went to her car and called her supervisor, Mr. Boson, to report the incident.  She reported to Mr. Boson the nature of the comments made to her and told him that she had left without picking up her sign-in sheets from the lunch.  She asked him if he could pick them up the next day because she did not feel comfortable going back into the office again.  Mr. Boson reluctantly agreed and stated that he would speak to Dr. Gilmore to get his side of the story.  Mr. Boson did not state that he was sorry this happened to Ms. Mims or ask her if she was alright.

16.     Mr. Boson picked up the sign-in sheets from the office the next day but did not speak with Dr. Gilmore.  Mr. Boson also did not immediately notify Human Resources of the incident.

17.     Ms. Mims also told Mr. Boson that the incident triggered PTSD because of the fact that she was sexually molested and raped as a child.  Mr. Boson responded with the comment, "great, now I've got to call H.R."

18.     The next day, Mr. Boson met Ms. Mims in the parking lot of a Kroger and gave her through her car window the sign-in sheets she had left behind.  He still did not ask if she was alright and instead turned around, walked back to his car, and left.

19.     A week later, Mr. Boson was on a ride-along with Ms. Mims and told her he didn't realize how "sensitive" she was.  The two did not speak much after that and this was Ms. Mims's last ride-along with Mr. Boson.

20.     Ms. Mims has never before had to deal with any situation like this in her two-decade career as a pharmaceutical sales representative and she has never previously had to make a complaint of this kind.

21.     In April 2019, Defendant communicated new parameters determining who would be "re-hired" back and who would not.  The parameters were based on performance metrics such as KPIs (Key Performance Indicators) and FCRs (Field Coaching Ride-Along Reports).  Ms. Mims's performance metrics were stellar.  She was ranked in the top ten percent of sales reps across the country and objectively met the performance criteria to enable her to be retained on her contract with Defendant.

22.     In addition, prior to the new parameters being communicated, Defendant had laid out objective criteria and specific goals to determine performance success and eligibility for bonuses under the contract.  Ms. Mims consistently met these goals.

23.     Despite this, Ms. Mims was not retained for the remainder of her three-year contract.  In making the ultimate decision, Mr. Boson was allowed to exhibit discretion in choosing who to retain and who not to.

24.     Defendant has articulated that the reason for Ms. Mims's termination was because she applied for her position too late and Defendant had already selected a male employee named Noland McMillian.  This rationale is false.

25.     First, Mr. McMillian worked in a different territory than Ms. Mims and the two were not competing for the same spot.  Ms. Mims worked in the Cypress territory and Mr.

McMillian worked in the Humble territory. Therefore, Defendant could have hired both. For the same reason, this was not a case of Ms. Mims's position being unavailable.

26.     Second, Ms. Mims did not apply too late. On July 23, 2019, an email was sent out stating that the job would be posted in a couple weeks. On August 4, 2019, the job was indeed posted. On August 8, 2019, Ms. Mims applied. Mr. McMillian allegedly applied on July 18, 2019. However, it is beyond comprehension how Mr. McMillian could have applied before the job was posted on August 4, 2019 and before correspondence notifying employees of the application process was sent out on July 23, 2019.

27.     The decision not to retain Ms. Mims was not based on objective, non-retaliatory criteria. Instead, it was illegally motivated by her complaint about sex discrimination. Simply put, had Ms. Mims not engaged in legally protected activity by complaining of sex discrimination, she would not have been terminated when she was. Accordingly, Ms. Mims's termination occurred in violation of Title VII of the Civil Rights Act of 1964. Ms. Mims brings this suit to obtain redress for that violation.

## TITLE VII CLAIM OF RETALIATION

**A.     Legal Standards**

28.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

29.     The Fifth Circuit has adopted the *McDonnell Douglas* evidentiary framework to retaliation claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Fabela v. Socorro Independent School Dist.*, (5th Cir. 2003). Under that evidentiary framework, a plaintiff must first establish a *prima facie* case of retaliation. *See Baker v. American Airlines, Inc.,* 430 F.3d 750, 754 (5th Cir. 2005); *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000).

30.     To establish a *prima facie* case of unlawful retaliation under Title VII, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer took an adverse action against her; and (3) a causal link exists between the protected activity and the adverse employment action. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

31.     If the plaintiff makes out a *prima facie* case of retaliation, then the defendant must articulate a legitimate non-retaliatory reason for the adverse employment decision. *See Baker,* 430 F.3d at 754-55. If the employer does so, the burden shifts back to the employee to establish that the employer's "stated reason is actually a pretext for retaliation." *Baker*, 430 F.3d at 755 (internal citations omitted).

32.     "Title VII prohibits an employer from retaliating against an employee because that employee has complained about acts of discrimination at work." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874 (5th Cir. 2003).

33.     A plaintiff is not required to establish that an actual violation of Title VII occurred in order to invoke the protections of the anti-retaliation provisions. Rather, a plaintiff only needs to show a reasonable belief that she was being discriminated against and that a complaint was made. *See Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

34.     "Close timing between an employee's protected activity and an adverse action against her may provide the causal connection required to make out a prima facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). A "time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans*, 246 F.3d at 354 (reversing summary judgment on this basis); *Cantu v. Vitol, Inc.*, Civil Action No. H-09-0576, 2011 WL 486289, at *10 (S.D. Tex. Feb. 7, 2011) (Rosenthal,

J.) (noting that "the Fifth Circuit has found temporal proximity of up to four months sufficient to show a causal link.").

35.     In order to show causation as to the ultimate issue of retaliation, i.e., that the protected activity caused the adverse employment action, the employee must establish "that absent his protected activity, the adverse employment action would not have occurred when it did." *Donaldson v. Texas Dept. of Aging and Disability Services*, 495 S.W.3d 421, 441 (App. 1st Dist.— Houston, 2016). "The employee 'need not establish that the protected activity was the sole cause of the employment action.'" *Donaldson* at 441 (internal quotation omitted); *Evans* at 354.

36.     But-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) (internal citation omitted). "In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.*

37.     "Often, events have multiple but-for causes." For example, "if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection," both can be but-for causes. *Id.* In employment discrimination cases, "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* "So long as the protected characteristic or protected activity was one but-for cause of that decision, that is enough to trigger the law." *Id.* (pointing out that the legislature could have added "solely" or "primarily because of" as it has in other statutes, but it chose not to do so here). Accordingly, the protected activity "need not be the sole or primary cause of the employer's adverse action" as the employer in many cases "easily could have pointed to some other, nonprotected trait and insisted it was the more important factor in the adverse employment outcome." *Id.* at 1744.

38.     The "existence of a causal link between protected activity and an adverse employment action is a 'highly fact specific' and difficult question. *Smith v. Xerox Corp.*, 371 F. Appx. 514, 520 (5th Cir. 2010).  Indicia of causation may be seen in factors such as: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith*, 371 F. Appx. at 520.

39.     All conditions precedent to this suit have been fulfilled.

**B.     Ms. Mims Suffered An Adverse Employment Action**

40.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

41.     The United States Supreme Court has held that an employee's burden to establish a "materially adverse employment action" is merely to show that she suffered some action that would dissuade a reasonable worker from exercising protected rights.  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

42.     An adverse action may include denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, discharge, threats, reprimands, negative evaluations, harassment, or other adverse treatment.  EEOC Compliance Manual, No. 915.003 (May 20, 1998), § 8-II(D)(1), p. 11.  An adverse action does not need to be an ultimate employment action or materially affect the terms or conditions of employment to constitute retaliation.  *Id.* at § 8-II(D)(3), p. 13.  As the EEOC puts it, "the statutory retaliation clauses prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Id.*  Significant retaliatory harm can be challenged regardless of the level of harm.  *Id.*  The degree of harm suffered by the individual goes to the issue of damages, not liability. *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997).  *See also EEOC v. L. B. Foster*, 123 F.3d

746, 754 n.4 (3rd Cir. 1997), cert. denied; *Smith v. Secretary of Navy*, 659 F.2d 1113, 1120 (D.C. Cir. 1981) (asserting that retaliation is a wrong in and of itself under Title VII, "regardless of whether that wrong would warrant an award of [damages]").

43.    The 5th Circuit has expressly held that refusals to hire and non-renewals of a contract constitute an adverse employment action.  *See Mooney v. Lafayette Cty. Sch. Dist.*, 538 Fed. Appx. 447, 453 (5th Cir. 2013) (stating "the non-renewal of her contract constituted a termination of employment, an adverse employment action" and "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands") (internal citations omitted); *Garrett v. Judson Indep. School Dist.*, 299 Fed. Appx. 337, 345 (5th Cir. 2008) (holding the non-renewal of the plaintiff's contract meant "she suffered an adverse employment action"); *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, No. 3:14-cv-853, 2016 WL 9631308 (S.D. Miss. August 8, 2016) at *5 ("Because there is no dispute that Defendants chose not to renew Malcolm's employment contract, the Court finds that Malcolm has satisfied the third element of the prima facia case.") (internal citation to record omitted).  Likewise and accordingly, Ms. Mims suffered an adverse employment action in this case when she was not renewed or rehired.

**C.    Ms. Mims Can Establish Retaliation**

44.    Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

45.    To establish a *prima facie* case of unlawful retaliation under Title VII, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer took an adverse action against her; and (3) a causal link exists between the protected activity and the adverse employment action.  *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).

46.     Ms. Mims made a legally protected report to Mr. Boson and therefore she was not rehired or renewed by Defendant a month later.  Ms. Mims engaged in protected activity, suffered an adverse employment action, and suffered the adverse employment action because she reported discrimination on the basis of sex to Defendant.

47.     If the employee makes out a *prima facie* case of retaliation, then the employer must articulate a legitimate non-retaliatory reason for the adverse employment decision.  *See Baker,* 430 F.3d at 754-55.  If the employer does so, the burden shifts back to the employee to establish that the employer's "stated reason is actually a pretext for retaliation."  *Baker*, 430 F.3d at 755 (internal citations omitted).

48.     As articulated above, Defendant's rationale that Ms. Mims applied too late and Mr. McMillian was already selected for her position is untenable because it belies the facts.  Ms. Mims can establish pretext because Defendant's articulated rationale for the adverse employment action against her is false.

**D.      Damages**

49.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

50.     Plaintiffs who prevail in a Title VII discrimination claim are entitled to back pay. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

51.     Prevailing plaintiffs are also entitled to reinstatement as an equitable remedy.  *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 1992).  If reinstatement is not feasible, front pay will be awarded in a manner consistent with the remedial purposes of the law.  *See Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992).  Unlike back pay, front pay

refers to future lost earnings.  Front pay awards can be substantial.  *See, e.g.*, *Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at \*8-9 (5th Cir. Feb. 1, 2011); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001); *Donlin v. Philips Lighting North Am. Corp.*, 581 F.3d 73, 88 (3rd Cir. 2009); *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 79 (2d Cir. 2004), *vacated on other grounds sub nom, KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005); *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999); *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir. 1995); *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993).

52.     Prevailing plaintiffs are also entitled to compensatory and punitive damages under Title VII, as well as attorney's fees and costs.  *See* 42 U.S.C. § 1981A(a)(1).

## JURY DEMAND

53.     Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that she be awarded a judgment against Defendant for the following:

      a.     Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

      b.     Reinstatement or front-pay;

      c.     Compensatory damages;

      d.     Punitive damages;

      e.     Prejudgment and post-judgment interest;

      f.     Court costs;

      g.     Attorney's fees; and

      h.     All other relief to which Plaintiff is justly entitled.

Respectfully submitted,


 /s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
DARCI MIMS