IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARCI MIMS, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-21-405 |
| ASHFIELD HEALTHCARE LLC, | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Mims worked as a short-term at-will seasonal pharmaceutical sales representative for Ashfield Health. She alleges that after a client sexually harassed her at a work meeting, she reported the harassment to her manager in March 2019. Mims completed her seasonal employment in April 2019. She applied for a second season in August 2019, but was not rehired. She sued Ashfield Health for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Ashfield Health moved for summary judgment, arguing that the manager responsible for hiring for the second season did not know that Mims had reapplied for a position, and that, in any event, Mims's application was late. Mims disputes both arguments.

Based on the pleadings; the motions, responses and replies; the applicable law; the summary judgment record; and the parties' briefs; Ashfield's motion for summary judgment, (Docket Entry No. 17), is denied.

The reasons for these rulings are explained below.

**I.      Background**

Mims began working for Ashfield as a pharmaceutical sales representative in October 2018 serving the Cypress area. She alleges that she attended an office lunch event with Dr. John

Gilmore, an Ashfield customer, on March 20, 2019. She alleges that Dr. Gilmore said things to her such as: "your company hired you for your looks and not your brains, huh?"; "you think you can just come in here with your cute little short skirt that screams grab my ass?"; "you think you can just flit your little eyelashes at me and make me write your product?"; "you do these things to me because you want me to f*** you, don't you"; "you know you want me!"; and "you'd look good tied up to my bed." (Docket Entry No. 1 at 2–3; Docket Entry No. 17 at 6). She alleges that she and other staffers told Dr. Gilmore to stop, but he did not. She left the office in tears.

Mims alleges that she promptly called her manager, Bo Boson, and reported what had occurred. She alleges that she explained to Boson that she left the lunch without picking up the sign-in sheets that Ashfield required each sales representative to turn in after client meetings. Because she did not feel comfortable returning to the office, she asked if she could pick up the sheets the following day instead. She alleges that Boson "reluctantly agreed and stated that he would speak to Dr. Gilmore to get his side of the story." (Docket Entry No. 1 at 3). She alleges that she told Boson that the incident triggered the PTSD she suffered from being sexually molested and raped as a child. Boson allegedly responded by saying "great, now I've got to call H.R." (Docket Entry No. 1 at 3). Boson reported the incident to Brittany Alber, an employee in human resources, and Ashfield investigated the incident. (Docket Entry No. 17).

The following week, Boson and Mims were in a car doing a ride-along for work. Mims alleges that Boson told her that he did not realize that Mims was so "sensitive." (Docket Entry No. 1 at 4). Alber and Boson told Mims that she did not need to return to Dr. Gilmore's office and that she should ask if she wanted to take time off or speak more with the human resources office. (Docket Entry No. 17-2).

In April 2019, Ashfield announced new metrics for deciding who would be rehired for a second season. (Docket Entry No. 18-3 at 70). The metrics were based on performance in the first season, including "Key Performance Indicators" and "Field Coaching Ride-Along Reports." (Docket Entry No. 18-3 at 70). Mims alleges that her metrics were "stellar" and that she "was ranked in the top ten percent of sales reps across the country and objectively met the performance criteria to enable her to be retained on her contract with [Ashfield]." (Docket Entry No. 1 at 4). Ashfield concedes that Boson continued to praise Mims's performance, rated her as "exceeding expectations," and described Mims in an April 12, 2019, email to his own manager as a "standout" performer. (Docket Entry No. 17 at 6; Docket Entry No. 17-7 at 2).

On July 3, 2019, Ashfield sent an updated email to sales representatives from Season 1. This email stated that "positions are being posted this week and interviews will begin in August." (Docket Entry No. 17-12 at 3). On August 8, 2019, Ashfield emailed the season 1 sales representatives that "season 2 positions are being posted." (Docket Entry No. 17-13). The email explained that because Ashfield was increasing the number of territories, the maps may have changed from season 1. The email explained that "[i]f you're not sure which territory to post for, please post for the territory that is closest to your place of residence and the DM will discuss the geographical fit with your [sic] during the interview process." (Docket Entry No. 17-13 at 2).

Mims submitted her application for Season 2 on August 8, 2019. (Docket Entry No. 18-3 at 81, 107). Boson emailed his interview schedule "with [his] returning reps" on August 19, 2019, setting interviews for August 21, 2019. The listed returning reps scheduled for interview were six of the seven top performers from season 1. Mims, who was ranked as the third highest performer in the Houston territories during season 1, was not on the list. (Docket Entry Nos. 18-3 at 81, 124–35). On August 21, 2019, Boson emailed that he wanted approval for "[his] six rehires." (Docket

3

Entry No. 18-3 at 114). Boson selected Noland McMillian on August 21, 2019, for the Cypress territory. (Docket Entry No. 18-3 at 116). Mims was not rehired for season 2.

Mims sued Ashfield for unlawful retaliation under Title VII, alleging that she was not rehired because she had reported Dr. Gilmore for sexual harassment. Ashfield responds that Mims's application was too late and that Boson did not know that Mims had applied when he made his hiring decisions.

## II. The Summary Judgment Standard and Evidence

### A. The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact,

but it need not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.,* 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). When the facts are undisputed, the court "need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

### B. The Record

Ashfield submitted the follow evidence in support of its motion for summary judgment:

- the declaration of Karina Davidzon, (Docket Entry No. 17-2);
- the deposition of Darci Mims, (Docket Entry No. 17-3);
- the deposition of Michael "Bo" Boson, (Docket Entry No. 17-4);

- Mims's Unsigned Offer Letter, (Docket Entry No. 17-5);

- the Investigation Report, (Docket Entry No. 17-6);

- an email to Mike Fish, (Docket Entry No. 17-7);

- Mims's Signed Offer Letter, (Docket Entry No. 17-8);

- the end of season termination email, (Docket Entry No. 17-9);

- Ashfield's employment policies, (Docket Entry No. 17-10);

- Season 2 Application Email, (Docket Entry No. 17-11);

- Season 2 Reminder Email, (Docket Entry No. 17-12);

- Season 2 Territory Update Email, (Docket Entry No. 17-13);

- FAQ for Ashfield, (Docket Entry No. 17-14);

- XOFLUZA Update Email, (Docket Entry No. 17-15); and

- Mims's Application, (Docket Entry No. 17-16).

Mims submitted the following responsive evidence:

- Darci Mims's resume;

- Mims's employment offer from Ashfield;

- Bo Boson's deposition excerpts;

- Mims's separation letter;

- Mims's recognitions;

- Email from Boson regarding Mims's visit to Dr. Gilmore dated March 1, 2019;

- Human Resources investigation report;

- excerpts from Mims's deposition;

- the declaration of Adrienne Robinett;

- an email from Ashfield's Human Resources Department dated April 12, 2019;

6

- Field Coaching Report on Mims dated April 18, 2019;

- Houston District Ratings;

- Ashfield season 2 spreadsheet;

- Ashfield Xofluza update email dated July 3, 2019;

- Ashfield "Territory Update" email dated August 8, 2019;

- Mims's Application for season 2;

- interview schedule email from Boson dated August 19, 2019;

- approval email from Boson dated August 21, 2019;

- submission of Noland McMillian dated August 21, 2019;

- McMillian signed agreement dated August 23, 2019;

- Season 1 market share data;

- Ashfield's EEOC Position Statement;

- Ashfield's Answer to Request for Admission No. 2;

- Ashfield's Answer to Interrogatory No. 4;

- Ashfield's Answer to Initial Discovery Protocols;

- Ashfield's Answer to Interrogatory No. 14;

- job application summaries of McMillian and Mims; and

- Ashfield's Answer to Interrogatory No. 5.

### III.  Analysis

Mims's Title VII retaliation claim, requires her to show: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).   The definition of adverse employment action for a retaliation

claim includes any act which "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  If Mims makes a prima facie showing of these elements, the burden then shifts to Ashfield to "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).  This "burden is one of production, not persuasion, and involves no credibility assessment." *Id.*  If Ashfield meets this burden, Mims then has "the burden of proving that the employer's reason is a pretext for the actual retaliatory reason." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

Ashfield does not dispute that Mims engaged in a protected activity by complaining about sexual harassment.  (Docket Entry No. 17 at 9).  Ashfield argues that because Boson asserts that he did not know that Mims had applied for season 2, Mims cannot make a prima facie showing of an adverse employment action or a causal link between the failure to rehire and her complaint.

Mims successfully worked in season 1 and applied for a season 2 position.  Ashfield did not rehire her.  The failure to be rehired could dissuade a reasonable employee from participating in protected activity and is an adverse employment action. *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019), *as revised* (Jan. 25, 2019) ("Failure to hire is an adverse employment action."); *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 453 (5th Cir. 2013) ("The non-renewal of her contract constituted a termination of employment, an adverse employment action.").  Mims has made a prima facie showing that she was subject to an adverse employment action.

For a Title VII retaliation claim, a plaintiff must show that the protected activity was a "but-for" cause of the adverse action. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436 (5th Cir. 2022).  The Fifth Circuit has explained that "indicia of causation may be seen in

8

factors such as: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010).

Ashfield argues that there is no casual connection between Mims's harassment complaint and the failure to be rehired because Boson did not know that Mims applied for season 2. Mims responds by pointing to evidence that she told Boson she intended to reapply and did so timely, disputing his statement that he did not know that she reapplied. She also points to the temporal proximity between the protected activity and her last day of work, her lack of any disciplinary record, the high praise she received for her work, and Ashfield's policy of giving priority to returning employees.

Mims engaged in protected activity on March 20, 2019. The decision not to rehire her took place before August 21, 2019. The Fifth Circuit has found a four month period short enough to show a causal link. *See, e.g., Evans v. City of Houston,* 246 F.3d 344, 355 (5th Cir. 2001) (finding that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes" (internal citations omitted)); *Richard v. Cingular Wireless LLC,* 233 F. App'x 334, 338 (5th Cir. Apr.13, 2007) (concluding that two-and-one-half months is short enough to support an inference of a causal link).

The five-month gap between Mims's protected activity and the adverse employment action was especially short in the context of the limited interactions between Mims and Ashfield in those months. Mims's employment for season 1 ended on April 26, 2019, just over a month after she engaged in the protected activity on March 20, 2019. Mims did not have another contact with Ashfield until she received the email update in July 2019, and she did not submit her application

9

for rehire until August 8, 2019. Between the end of season 1 work on April 26, 2019, and Mims's reapplication for season 2 on August 8, 2019, there was no opportunity for Ashfield to engage in any action towards Mims, adverse or otherwise.

In addition to the temporal proximity, Mims had a stellar performance record and no disciplinary history. Ashfield argues that a recruiter is to blame, because it failed to forward Mims's application to Boson. Mims notes there is no evidence that a recruiter was handling the applications. Mims applied through the same process as those who were rehired. There is no evidence that a recruiter would have forwarded McMillian's application but not Mims's or that a recruiter was involved with a returning applicant. *See Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011) (an employer's failure to follow policy in demoting and terminating employee supports causal link to adverse employment action). Mims submitted her application the same way that her replacement, McMillian, submitted his application. (Docket Entry No. 18-3 at 161–62). She also points to evidence that she told Boson that she would reapply. There are, in short, factual disputes material to deciding if Mims's protected activity was a but-for cause of Ashfield's decision not to rehire her. She has stated a prima facie case of retaliation.

Ashfield has offered the legitimate, nondiscriminatory or nonretaliatory reason that it did not rehire Mims because Boson, the manager in charge of hiring her for season 2, did not receive her application. Mims argues that Ashfield's reason is pretextual because it has changed over time and is not supported by the record.

When an employer offers inconsistent reasons for an employment decision, the court may consider the inconsistencies as evidence of pretext. *See Staten v. New Palace Casino, LLC.*, 187 F. App'x 350, 359 (5th Cir. 2006) (citing *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002)).

10

In the EEOC proceedings, Ashfield argued that Mims did not get a season 2 job because she applied late. Ashfield changed its position and argued to this court that Mims was not rehired for season 2 because Boson did not know that she had applied. Ashfield responds that its EEOC statement expressly stated that it was based on a preliminary investigation and might change, and that its current position is consistent with its earlier statement. In the EEOC statement, Ashfield explained that Mims did not get the job because Ashfield "had already begun the hiring process with Mr. McMillian prior to Complainant even applying for the job." (Docket Entry No. 18-3 at 139). Ashfield also that explained "the main reason—perhaps the only reason—Complainant did not get the job is because she did not apply until August 8, three weeks after Mr. McMillian," and that after McMillian applied, "there was no job for Complainant." (Docket Entry No. 18-3 at 139). This is related but distinct from Ashfield's current argument that the only reason Mims was not rehired was that the decisionmaker, Boson, did not know that she applied when he made the decision to rehire six season 1 people for season 2 on August 21, 2019. Ashfield's current position suggests that the job was still available to Mims until August 21, 2019, when McMillian was hired for the Cypress territory, but the earlier argument was that the position was filled starting in July when McMillian had applied.

Five of the six returning representatives for season 2 applied on August 6 or 7, 2019. Mims applied on August 8, 2019. Ashfield points to the absence of evidence that Boson received applications for any season 1 representatives who applied for season 2 after August 7, 2019—the day before the reminder email was sent to season 1 representatives and the day before Mims applied. But Boson submitted his list of interviewees on August 19, 2019, did not conduct interviews until August 21, 2019, and did not make final selections until August 21, 2019. Mims was the only one of the seven highest-ranked applicants in the Houston District whose application

11

Boson allegedly did not receive and who was not rehired. And although Ashfield assigned only inside sales representatives to handle calls to Dr. Gilmore's office after Mims complained, McMillian, a male, resumed in-person visits with Dr. Gilmore for season 2.

Ashfield relies on Boson's asserted lack of knowledge of Mims's application when he was instructed to set up interviews for applicants. Ashfield blames "HR and our recruiters" for not forwarding Mims's application to Boson. He testified that he was "not familiar with Ashfield's process," but that he "screened those who were returning." (Docket Entry No. 19-1 at 6). Ashfield has not explained how the recruiting process would have caused Mims's application to be the only one of the top 7 applicants to not be forwarded, and Mims to not be rehired. Mims notes there was no reason for recruiters to be involved when she submitted her application through the same portal as other returning applicants; no recruiter was needed.

Mims points to the four other employees identified by Ashfield as having knowledge of the facts at issue in this lawsuit and who knew of Mims's protected activity. The lack of evidence as to whether Boson received Mims's application by email does not address the evidence that some agent or employee of Ashfield would have seen her application; she was very qualified for the job; and she the only one of the top reapplicants who did not receive an interview or season 2 job.

Mims has shown that there are factual disputes material as to determining whether someone in the hiring process at Ashfield viewed her application and decided not to proceed with rehiring her following her protected activity.

## IV. Conclusion

Ashfield Healthcare, LLC's motion for summary judgment, (Docket Entry No. 17), is denied.

SIGNED on March 28, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge